1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   TERRELL NAQUAN BAMS,

9                                  Plaintiff,

10          v.

11   MICHAEL J ASTRUE, Commissioner of
     Social Security,

12                                  Defendant.

Case No. C12-5547-RAJ-BAT

**REPORT AND
RECOMMENDATION**

13        Terrell Naquan Bams seeks review of the denial of his Disability Insurance Benefits and

14   Supplemental Security Income applications.  He contends the ALJ erred by (1) improperly

15   evaluating the medical and lay witness evidence, (2) improperly finding Mr. Bams not fully

16   credible, and (3) and incorrectly assessing Mr. Bams's residual functional capacity and finding

17   him not disabled at step five.  Dkt. 22.  For the reasons set forth below, the Court recommends

18   the case be **REVERSED** and **REMANDED** for further administrative proceedings pursuant to

19   senetence four.

20                    **FACTUAL AND PROCEDURAL HISTORY**

21        Mr. Bams was born in 1975 and was 33 years old on the alleged disability onset date.

22   Tr. 171.  He has at least a high school education and previously worked as a materials handler,

23   children's institution attendant, and caterer's helper.  Tr. 21, 46, 62.  In January 2011, he applied

REPORT AND RECOMMENDATION - 1

for benefits, alleging disability beginning September 11, 2009.  Tr. 10, 167-68, 171-77.

The Commissioner denied his applications initially and on reconsideration.  Tr. 66-67, 94-95.  He requested a hearing which took place on November 2, 2011.  Tr. 30-65.  On January 27, 2012, the ALJ issued a decision, finding Mr. Bams not disabled.  Tr. 10-23.  The Appeals Council denied Mr. Bams's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.  On June 21, 2012, Mr. Bams timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Mr. Bams had not engaged in substantial gainful activity since September 11, 2009, the alleged onset date.

**Step two:**  Mr. Bams had the following severe impairments:  schizoaffective disorder, depressed type; rule-out posttraumatic stress disorder; and osteoarthritis of the left knee.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Mr. Bams could perform light work, except he could not climb ladders, ropes, or scaffolds; he could occasionally kneel or crawl; he could frequently climb ramps or stairs, balance, stoop, or crouch; he must avoid concentrated exposure to cold and hazards; he is limited to simple, routine, and repetitive tasks with only one to two steps; he can have occasional contact with coworkers and supervisors; he can have no contact with the public; he can have few, if any, changes in the work setting; he can perform no tasks involving a manufacturing–style production pace.

**Step four:**  Mr. Bams was unable to perform his past relevant work.

**Step five:**  Mr. Bams is capable of performing other jobs existing in significant numbers in the national economy and, therefore, is not disabled.

Tr. 12-21.

_____
[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

# DISCUSSION

## A.     Evaluation of the Medical Opinions

Mr. Bams argues that the ALJ erred in evaluating the opinions of treating doctor Amy

Morris, Ph.D., examining doctors Brett Trowbridge, Ph.D., and Russell Bragg, Ph.D., and non-

examining doctors Diane Fligstein, Ph.D., and Sean Mee, Ph.D.

In general, more weight should be given to the opinion of a treating doctor then to a non-

treating doctor, and more weight to the opinion of an examining doctor then to a non-examining

doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another

doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing

reasons."  *Id*. at 830-31.  Where contradicted, a treating or examining doctor's opinion may not

be rejected without "specific and legitimate reasons" that are supported by substantial evidence

in the record.  *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does

this by setting out a detailed and thorough summary of the facts and conflicting evidence,

stating his interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*,

881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions; he must

also explain why his interpretation, rather than the doctor's interpretation, is correct.  *Orn v.*

*Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

Cir. 1988)).

### *1.     Amy Morris, Ph.D.*

Treating psychologist Amy Morris, Ph.D., managed Mr. Bams's mental health treatment

at the VA's Psychosocial Rehabilitation and Recovery Center.  Tr. 687-93.  On August 5, 2010,

Dr. Morris completed  a psychological assessment of Mr. Bams, consisting of a clinical

interview, Minnesota Multiphasic Personality Inventory (MMPI-2), Rorschach Inkblot Test,

1  Shipley Vocabulary Test, and Structured Clinical Interview for DSM-IV (SCID).  She noted Mr.

2  Bams's mood ranged from anxious to euthymic, his affect was usually flat, his presentation was

3  polite but guarded, his speech was perseverative, and he spoke in an idiosyncratic manner, often

4  using overly formal diction.  Tr. 689-90.  Although his providers had not witnessed a major

5  mood episode, Dr. Morris noted Mr. Bams presented with significant symptoms of social

6  anxiety.  Tr. 691.  IQ testing indicated moderate impairment in intellectual abilities.  In addition,

7  his profile was consistent with someone who has concentration difficulties and memory

8  problems.  Tr. 692.  Dr. Morris opined,

9      His presentation is consistent with someone who has grown accustomed to his
       problems and functions at a chronically low level.  . . . In terms of treatment
10     setting, he is likely to function best in an environment that is both highly
       structured and also where he experiences some sense of control over his routine.

11
       Psychological tests indicated that Mr. Bams's personality organization is less
12     mature than might be expected.  In turn, this creates a vulnerability to problems in
       coping with the requirements of everyday living.  These functional impairments
13     come to light in the intrapersonal sphere and likely contribute to his difficulty
       navigating complex systems (e.g., the VA) and obtaining necessary tools to
14     prevent chronic homelessness.

15  Tr. 692-93.  Dr. Morris diagnosed Mr. Bams with schizoaffective disorder, depressed type, and

16  assigned him a Global Assessment of Functioning ("GAF") score of 30 (during examination),

17  indicating "[b]ehavior is considerably influenced by delusions or hallucinations OR serious

18  impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly

19  inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in

20  bed all day, no job, home, or friends)."[3]  *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical*

21  *Manual of Mental Disorders* 34 (Text Rev., 4th ed. 2000) (DSM-IV-TR).

22      Although the ALJ cited Dr. Morris's treatment notes in his decision, he did not give any

23  [3] A GAF score is the clinician's judgment of the individual's overall level of functioning.  DSM-IV-TR at 32.

REPORT AND RECOMMENDATION - 4

reasons to reject her clinical findings or functional assessment.  The ALJ noted that the record

contains GAF scores ranging from 30 to 50, but gave these scores "very little weight" because

they "lack probative value."  Tr. 18 (citing Tr. 416 (GAF 45), 464 (GAF 35), 497 (GAF 35), 563

(GAF 40), 693 (GAF 30), 820 (GAF 40), 909 (GAF 45), 961 (GAF 50)).  The ALJ noted the

GAF scores "are an attempt to rate symptoms or functioning," but found "it is not evident from a

review of the scores in the record which of these the respective clinicians were rating."  Tr. 18-

19.  The ALJ stated, "This is particularly relevant to my analysis of the claimant's ability to

perform basic work activities, as symptoms are the individuals 'own description' of his or her

impairments.  And as I find that the claimant's statements about his functioning are less than

fully credible, a score based on such statements is of little value in my analysis."  Tr. 19 (citation

omitted).  The ALJ further noted that GAF scores "[do] not have a direct correlation to the

severity requirements in our mental disorders listings."  Tr. 19 (citing 65 Fed. Reg. § 50746-01).

For these reasons, the ALJ found "the GAF scores in this case do not convey information that

furthers the functional analysis and therefore [gave] the scores very little weight."  Tr. 19.  Mr.

Bams correctly argues the ALJ erred.

First, to the extent the ALJ found Dr. Morris's GAF score of 30 was merely a reflection

of Mr. Bams's self-reports, this finding does not accurately reflect Dr. Morris's clinical findings

and testing.  Rather, Dr. Morris's opinion was based on her findings from mental status

examinations, consisting of medically demonstrable and observable abnormalities of behavior,

affect, thought, memory, orientation, and contact with reality.  *See* 20 C.F.R. § 416.928(b).  In

addition, Dr. Morris used various tests and techniques in evaluating Mr. Bams's personality,

cognitive, and emotional functioning (MMPI-2, Rorschach, Shipley, SCID).  Tr. 715.  Based on

the results of the various tests and techniques, Dr. Morris concluded that Mr. Bams functions at a

"chronically low level," and has difficulty "coping with the requirements of everyday living," "in the interpersonal sphere," and "navigating complex systems." Tr. 718. The ALJ's assertion that Dr. Morris's evaluation is not objective is not supported by the record.

Second, while a GAF score may not have a "direct correlation" to the Social Security requirements in the Listings, the ALJ does not proffer any authority indicating that Dr. Morris's assessment of a GAF score of 30 and its implications may be ignored or rejected without sufficient reasons. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Indeed, mental status examinations and the results of psychological tests provide useful information for disability evaluation. *See* 20 C.F.R. §§ 404.1513(b)(2), 416.913(b)(2). Thus, courts have found GAF scores to be "relevant evidence" of a claimant's ability to function mentally. *See England v. Astrue*, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). As indicated above, a GAF score of 30 is extremely low and indicates either behavior is considerably influenced by delusions or hallucinations, a serious impairment in communication or judgment, or an inability to function in almost all areas. This is significant probative evidence that the ALJ should have given consideration to, even if ultimately he would not have been required to adopt it. The ALJ's reasons for rejecting the opinion of treating physician Dr. Morris are not supported by substantial evidence and fail to consider the totality of Dr. Morris's assessment.

The Commissioner argues that the ALJ correctly rejected Dr. Morris's opinions on the grounds that certain problems were not demonstrated during examinations, the findings were not consistent with PTSD, and the GAF score of 30 appeared to be of limited duration. Dkt. 23 at 6. These are *post hoc* rationalizations which the ALJ himself did not provide as for reasons for not adopting the limitations found by Dr. Morris. As the ALJ did not rely on these reasons to discount Dr. Morris's opinions, neither can the Court. *See Pinto v. Massanari*, 249 F.3d 840,

1  847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground the agency did

2  not invoke in making its decision.").

3        Although the ALJ erred, the Court cannot say it is clear the ALJ would be required to

4  award benefits if the evidence, if accepted, were credited.  Mr. Bams argues, "One must read Dr.

5  Morris' analysis to indicate that Plaintiff would miss 2 or more days of work per month and/or

6  require irregular breaks beyond the ordinary 3 tolerated by unskilled work."  Dkt. 24 at 7.

7  However, Dr. Morris did not specify these limitations.  Under these circumstances it is

8  appropriate to remand the matter for further determinations.

9        ***2.    Russell Bragg, Ph.D., and Brett Trowbridge, Ph.D.***

10       On March 19, 2010, Russell Bragg, Ph.D., completed a Psychological/Psychiatric

11  Evaluation of Mr. Bams.  Tr. 495-507.  On mental status examination, Mr. Bams showed

12  impaired memory, impaired fund of knowledge, and impaired concentration.  Tr. 503-04.  On the

13  Beck Scales (Beck Depression Inventory, Beck Anxiety Inventory, and Beck Hopelessness

14  Scale), Mr. Bams scored in the very severe range on all three measures.  Tr. 505.  Dr. Bragg

15  noted Mr. Bams "exhibited significant social discomfort today in the interview, with

16  nervousness, poor eye contact, and agitation evident."  Tr. 504.  Dr. Bragg opined that Mr. Bams

17  "does not appear capable of working at the present time due to the presence of significant

18  psychiatric symptoms, in spite of the use of multiple medications."  Tr. 505.  Dr. Bragg

19  diagnosed major depressive disorder, recurrent, severe, with psychotic features versus

20  schizoaffective disorder versus schizophrenia, disorganized type; rule out PTSD; rule out alcohol

21  dependence; rule out agoraphobia without history of panic disorder versus paranoia as a

22  manifestation of a psychotic disorder.  Tr. 506.  He assigned Mr. Bams a GAF score of 35,

23  indicating some impairment in reality testing or communication, or major impairment in several

REPORT AND RECOMMENDATION - 7

areas, such as work or school, family relations, judgment, thinking, or mood.  DSM-IV at 34.

Dr. Bragg found that Mr. Bams had moderate limitations in his ability to follow complex tasks, exercise judgment and make decisions, and care for self.  Tr. 498.  He found Mr. Bams had marked limitations in his ability to learn new tasks, perform routine tasks, relate appropriately to co-workers and supervisors, and interact appropriately in public contacts.  *Id*.  He also found Mr. Bams had severe limitations in his ability to respond appropriately to and tolerate the pressures and expectations of her normal work setting, and to maintain appropriate behavior in a work setting.  *Id*.  He estimated Mr. Bams would remain unemployable for six to twelve months or more while he participates in further evaluation and treatment.  Tr. 499, 507.

On January 6, 2011, Brett Trowbridge, Ph.D., completed a Psychological/Psychiatric Evaluation of Mr. Bams.  Tr. 908-21.  Dr. Trowbridge diagnosed Mr. Bams with schizoaffective disorder, and assigned him a GAF score of 45, indicating serious symptoms, or any serious impairment in social, occupational, or school functioning.  DSM-IV at 34.  He opined that Mr. Bams had moderate ability to follow simple tasks, follow complex tasks, and perform routine tasks without undue supervision.  Tr. 910.  He found that Mr. Bams had marked limitations in his ability to learn new tasks, maintain awareness of normal hazards and take appropriate precautions, work with the public, and maintain appropriate behavior in a work setting.  *Id*.

The ALJ rejected the opinions of Dr. Bragg and Dr. Trowbridge, stating in both instances that "this opinion relies heavily on the subjective reports of symptoms and limitations provided by the claimant, and the totality of the evidence is inconsistent with this opinion.  For these reasons, little weight is given to this opinion."  Tr. 19, 20.

These are not specific and legitimate reasons to reject the doctors' opinions.  First, the ALJ's statement that Drs. Bragg and Trowbridge relied heavily on Mr. Bams's subjective

complaints is not a legitimate basis to reject the doctors' opinions.  Much of the evidence in a

patient diagnosed with a mental disorder will be based on the patient's subjective reporting.

Hence, the fact that the doctors' relied on statements made by Dr. Bams is not a basis to reject

the doctors' opinions.  Moreover, there is evidence indicating the doctors rendered their opinions

based on mental status examinations, psychological testing, clinical observations, and their own

professional judgment, rather than relying primarily on Mr. Bams's subjective complaints.  Dr.

Bragg's evaluation further indicates he was quite aware Mr. Bams "was not a very reliable

historian."  Tr. 496, 501, 596.  Having that knowledge, Dr. Bragg nonetheless concluded Mr.

Bams genuinely suffers from mental illness that severely impairs his ability to work.  It was

improper to reject the doctors' opinions on the grounds they are largely based upon the

claimant's subjective self-reports of his symptoms.

       Second, the ALJ rejected the doctors' opinions on the grounds that "the totality of the

evidence does not support the opinion."  Tr. 19.  This bald statement is not the type of specific,

legitimate reason based on substantial evidence in the record that the Court requires when the

opinion of a doctor is rejected.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  "To

say that medical opinions are not supported by sufficient objective findings . . . does not achieve

the level of specificity our prior cases have required . . . .  The ALJ must do more than offer his

conclusions.  He must set forth his own interpretations and explain why they, rather than the

doctors', are correct."  *Embry*, 849 F.2d at 421-22.  Accordingly, the Court finds the ALJ

rejected the opinions of Drs. Bragg and Trowbridge without giving specific and legitimate

reasons.  Remand is warranted.

       **3.**      **Diane Fligstein, Ph.D., and Sean Mee, Ph.D.**

       On June 20, 2011, state agency psychologist Diane Fligstein, Ph.D., opined Mr. Bams is

REPORT AND RECOMMENDATION - 9

moderately limited in ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 76, 89.  She opined Mr. Bams "should work where he is able to received adequate breaks to reduce stress that might interfere with his [concentration, persistence, and pace]."  *Id.*

On August 11, 2011, state agency psychologist Sean Mee, Ph.D., opined Mr. Bams "should work where he is able to receive adequate breaks to reduce stress that might interfere with his [concentration, persistence, and pace].  [He] is able to maintain [attention/concentration] on simple work tasks and carry out simple as well as some detailed work.  [H]is [anxious] self reported suspiciousness suggest would perform better if not required to work in close cooperative effort with others."  Tr. 104, 117.

The ALJ assigned "some weight" to Dr. Fligstein's and Dr. Mee's opinions because they were "partially consistent with objective medical evidence."  Tr. 20.  However, the ALJ found these opinions were "made without the benefit of more recent evidence, and the above residual functional capacity better accommodates the claimant's severe impairments."  *Id.*

Mr. Bams argues the ALJ failed to give sufficient reasons for rejecting the opinions of Drs. Fligstein and Mee that he should work where he is able to receive adequate breaks to reduce stress that might interfere with his concentration, persistence, and pace.  He contends the ALJ did not cite any "more recent evidence," and all of the evidence the ALJ, Dr. Fligstein, and Dr. Mee relied upon pre-dated Dr. Fligstein's June 2011 opinion and Dr. Mee's August 2011 opinion. The Court agrees with Mr. Bams.

An ALJ may properly reject a doctor's opinion that is inconsistent with other evidence in the record. *See generally Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Here, however, the ALJ did not state what portions of the state agency opinions he considered "consistent with objective evidence" and what portions he was rejecting. Nor did he identify what "recent evidence" not reviewed by the state agency doctors conflicts with or undermines those portions of the doctors' opinions the ALJ was rejecting. These types of conclusory statements, as discussed above, are insufficient grounds to reject the doctors' opinions. The ALJ failed to provide specific and legitimate reasons for rejecting Dr. Fligstein's and Dr. Mee's opinions.

For the reasons stated and based on the relevant record, the Court concludes that the ALJ failed to evaluate properly the medical evidence regarding Mr. Bams's mental impairments and limitations and that this matter should be reversed and remanded to the Commissioner for further administrative proceedings.

**B.    Evaluation of the Lay Witness Evidence**

Mr. Bams argues that the ALJ erred in rejecting the evidence from treating mental health care providers Keith Meyer, MS, LMHC, and Barbara Fraley, NP, DMHP.

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing so. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Counselors and nurse practitioners are not acceptable medical sources who can give medical opinions. 20 C.F.R. § 416.913(a). The ALJ may evaluate opinions of other medical sources using the same factors applied to evaluate opinions of acceptable medical sources. SSR 06-03p. These factors include the length and frequency of the treaty relationship,

how consistent the opinion is with other evidence, the evidence the source presents to support

the opinion, how well the source explains the opinion, whether the source has a specialty or area

of expertise related to the impairment, as well as any other relevant factors.  *Id.*  But the ALJ

may give less weight to opinions of other medical sources than to those of acceptable medical

sources.  *Id.*

### 1.      Keith Meyer, MS, LMHC

Mr. Meyer, a treating mental health therapist, testified at the administrative hearing that

Mr. Bams has difficulty leaving the house and struggles to interact with people.  Tr. 53.  He

opined Mr. Bams's difficulty communicating, PTSD symptoms, and difficulties with sleep are

his greatest barriers to employment.  Tr. 55.

The ALJ rejected Mr. Meyer's testimony that Mr. Bams has trouble leaving his residence

or interacting with others, finding it "inconsistent with the overall record, which reveals that the

claimant has the ability to take the bus, shop, attend appointments, and interact with others

during group therapy in an appropriate manner."  Tr. 19.  An ALJ may reject lay witness

evidence that conflicts with other evidence in the record regarding the claimant's activities.  *See*

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (holding the ALJ

properly rejected lay witness testimony that the claimant has trouble understanding and appears

confused because it was inconsistent with the claimant's successful completion of continuous

full-time work).  One germane reason is sufficient to discredit statements from a source that is

not an acceptable medical source.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223–24

(9th Cir. 2010).  The ALJ properly rejected Dr. Meyer's opinion.

### 2.      Barbara Fraley, NP, DMHP

Ms. Fraley completed Psychological/Psychiatric Evaluations of Mr. Bams in September

REPORT AND RECOMMENDATION - 12

1   2009 and June 2010.  Tr. 379-84, 666-72.  In September 2009, Ms. Fraley opined Mr. Bams had

2   moderate limitations in ability to exercise judgment and make decisions; marked limitations in

3   ability to follow complex tasks, learn new tasks, relate appropriately to coworkers, supervisors,

4   and interact with the public; and severe limitations in ability to respond appropriately to and

5   tolerate the pressures and expectations of a normal work setting, and maintain appropriate

6   behavior in a work setting.  Tr. 382.  She noted Mr. Bams "is currently unable to work because

7   he is too debilitated by mental illness."  *Id*.

8         In June 2010, Ms. Fraley opined Mr. Bams had marked limitations in ability to follow

9   complex tasks; learn new tasks; exercise judgment and make decisions; relate appropriately to

10  coworkers, supervisors, and interact with the public; respond appropriately to and tolerate the

11  pressures and expectations of a normal work setting; and maintain appropriate behavior in a

12  work setting.  Tr. 670.  Finally, Ms. Fraley noted again Mr. Bams "is currently unable to work

13  because he is too debilitated by mental illness."  *Id*.

14        The ALJ summarized Ms. Fraley's 2009 and 2010 opinions, and stated Ms. Fraley's

15  opinions "rely heavily on the subjective reports of symptoms and limitations provided by the

16  claimant, and the totality of the evidence is inconsistent with her opinions.  For these reasons,

17  little weight is given to these opinions."  Tr. 19-20.

18        Mr. Bams contends that the ALJ did not provide germane reasons for rejecting Ms.

19  Fraley's lay witness testimony.  Mr. Bams asserts that the ALJ's "stock reasons were not

20  germane to the witness and so failed the agency and circuit standards.  Dkt. 22 at 15.  The

21  Commissioner did not respond to Mr. Bams's argument.

22        Mr. Bams is correct.  The ALJ summarily rejected Ms. Fraley's opinions, but did not

23  provide any specific and germane reasons for doing so.  On remand, the ALJ is directed to

REPORT AND RECOMMENDATION - 13

1  reconsider Ms. Fraley's lay witness testimony.

2  **C.      Credibility Assessment**

3          Mr. Bams argues the ALJ improperly evaluated his testimony about his symptoms and

4  limitations.  The ALJ did not find Mr. Bams was malingering.  Thus, the ALJ was required to

5  provide clear and convincing reasons to reject his testimony.  *Vertigan v. Halter*, 260 F.3d 1044,

6  1049 (9th Cir. 2001).

7          Because this case should be remanded for reconsideration of the medical evidence, and

8  the ALJ's credibility determination was inextricably intertwined with the ALJ's assessment of

9  the medical evidence, Mr. Bams's credibility should also be revisited on remand.  After

10 reevaluating the medical evidence, the ALJ will be in a better position to assess Mr. Bams's

11 credibility.

12 **D.      Residual Functional Capacity Assessment and Step Five Finding**

13         Mr. Bams argues that the ALJ erred in assessing his residual functional capacity because

14 he did not base his assessment on a proper evaluation of all of the medical evidence and Mr.

15 Bams's testimony.  As discussed earlier, the ALJ erred in evaluating the medical evidence.

16         Accordingly, the ALJ must reevaluate Mr. Bams's residual functional capacity after

17 properly addressing these opinions.  The ALJ must then complete the five step disability

18 evaluation process by evaluating whether there is any work in the national economy Mr. Bams

19 can do, using the testimony of a vocational expert as necessary.

20 **E.      Remand for Further Proceedings**

21         The decision whether to remand for further proceedings or for an award of benefits is

22 within the district court's discretion.  *Harmon v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).

23 Where no useful purpose would be served by further administrative proceedings, or where the

REPORT AND RECOMMENDATION - 14

record had been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179. However, where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id*. In this case remand is appropriate in order to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four and as set forth above.

Any objections to this Report and Recommendation must be filed and served upon all parties no later than **March 5, 2013**. If no objections are filed, the matter will be ready for the Court's consideration on **March 8, 2013**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 19th day of February, 2013.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15